BUCHANAN *et al. v.* WILLIS *et al.*

(*Nashville,* December Term, 1952.)

Opinion filed January 15, 1953.

Ewing Smith, of Murfreesboro, and Robert L. Keele, of Manchester, for appellants.

H. J. Garrett, of Manchester, for Admr. c/t/a and Trustees of Church of Christ in Manchester.

Edwin T. Nance, of Shelbyville, for Trustees of Church of Christ at Fairfield.

Mr. Justice Tomlinson delivered the opinion of the Court.

In 1936 J. H. Cobb and wife, Lena, executed in testamentary form what is commonly called a joint will. Upon Mr. Cobb's death in 1942 this instrument was probated as his will, and his estate administered. Mrs. Cobb died in 1950. In due course thereafter the heirs of Mr. and Mrs. Cobb, respectively, filed this bill under the declaratory judgment statute for the purpose of procuring a decree adjudging this instrument void for each of several reasons. The Chancellor sustained the instrument as the valid wills of Mr. and Mrs. Cobb, respectively. The case is here on complainants' appeal.

██ ██ One insistence of appellants is that this instrument "is a joint testamentary instrument, treating the property as jointly owned and as a common fund and not separate property separately disposed of so as to take the character of the Will of each independent of the other". They refer to *Epperson* v. *White,* 156 Tenn. 155, 299 S. W. 812, 57 A. L. R. 601, and *Richmond* v. *Richmond,* 189 Tenn. 625, 227 S. W. (2d) 4, as cases supporting this insistence.

The will, insofar as pertinent to the insistence stated, is as follows:

"* * * do hereby make and publish this our joint last will and testament, hereby revoking and making void any and all former wills heretofore made by us or either of us.

"First: We direct that all our just debts and funeral expenses be paid out of any property which may be owned by either of us at the time of our respective deaths, as soon as practicable.

"Second: We hereby direct and it is our desire that all the real property of which either of us may be seized and possessed, as tenants in common, or otherwise, at the time of the decease of either of us, shall pass to and shall be held and enjoyed by the survivor for and during his or her natural life, * * *.

* * * * * *

"We hereby direct that it is our further desire that such survivor shall become vested with the absolute title to and shall become absolute owner of any and all personal property owned by decedent, at the time of his or her death.

* * * * * *

"We further direct that any and all personal property of which the survivor of this will may be the owner at the time of his or her death, is bequeathed to each Church herein mentioned situated in the County wherein the personal property may be located at the time of such death and shall pass to the Trustees or their successors in trust in such Church, to be used in the manner aforesaid.

* * * * * *

"Third: Upon the decease of the survivor, it is our desire that our property shall be disposed of, and the same is hereby devised and bequeathed as follows:"

In the case of *Popejoy* v. *Peters*, 173 Tenn. 484, 121 S. W. (2d) 538, a Mr. and Mrs. Donehew executed a joint will very similar in its disposing clauses to the above quoted disposing clauses of the Cobb will. The Court sustained it as the valid will of each, saying 173 Tenn. at pages 486-487, 121 S. W. (2d) at page 539: "We see no reason why this will could not have been

probated as a separate disposition of the property of G. V. Donehew at his death and again probated as a separate disposition of the property of Emly Donehew at her death. * * * the circumstance that two wills were written on the same piece of paper was not a matter of any consequence.''

By the Cobb will under consideration in the instant case each testator gives to the survivor all the personal property of the one first dying after payment of debts. The survivor of the two gives to named trustees for the benefit of specified churches all personal property which such survivor may own at the time of his or her death. Each testator gives to the survivor a life estate in any realty which may be owned at the time of death by the one first dying. Therefore, counsel for appellants are mistaken, we think, in their insistence that Mr. and Mrs. Cobb did not treat their respective properties as separately owned, or separately disposed of by this will. To the contrary, each did make a separate disposition of his or her property, effective immediately upon the death of the one owning such property. That was not true as to the wills involved in the Epperson and Richmond cases, supra.

We think there is no escape from the fact that the will in the case now at bar comes squarely within *Popejoy* v. *Peters,* supra, and must be sustained as the valid will of Mrs. Cobb unless invalid for some one or more of the other reasons assigned by appellants.

█ Described parcels of real estate are devised to named trustees and their successors for the use and benefit ''of the Church of Christ worshiping at Manchester, Tennessee''. Described parcels of real estate are likewise devised to named trustees and their successors for the use and benefit ''of the Church of Christ

worshiping at Fairfield, Bedford County, Tennessee''. With the exception of a residence owned by Mrs. Cobb all of. the real. estate so devised to these trustees for the benefit of these Churches was real estate owned by Mr. and Mrs. Cobb as tenants by the entirety. ·Since she survived her husband all this real estate passed into the trust under her will. Such was the situation as to part of the property involved in *Popejoy* v. *Peters*, supra. As to that property the Court said: ''Insofar as the instrument undertakes to dispose of the estate by the entirety, it could have no effect anyhow on the death of the first testator. In this particular, it could only be effective as the will of the survivor''.

It is conceded that the devises to the trustees for the Churches are public charitable trusts. It is insisted, however, that these trusts are invalid because of the following provisions:

''It is the desire of the testators of this Will that the beneficiaries of the same, that is to say said Churches, and or Trustees thereof shall be composed of congregations or persons who adhere rigidly to the work and worship of congregations as required by the New Testament, and who stand opposed to all innovations and devices of men, such as the organ and other instruments of music in connection with the worship, and any other society other than the Church of Christ in carrying out the work of God.

''In the event of any departure from the New Testament teachings by either of said Churches or by those handling the trust funds described in this will, such funds shall be transferred to and become the property of the Elders or Trustees of the congregation nearest by in each county referred to above, who most rigidly adhere to the requirements of the New

Testament. That is to the nearest Church of Christ congregation.''

It is argued for appellants that people differ radically in their respective views as to what the New Testament teaches. It is insisted, therefore, that this trust is void because it does not define the charitable uses to which the trust property is to be applied with sufficient definiteness to be judicially enforced.

Charitable trusts have often ''been sustained, in cases, where, if the trusts had been for other objects, they would have been void for uncertainty''. *Ratto* v. *Nashville Trust Co.*, 178 Tenn. 457, 465, 159 S. W. (2d) 88, 91, 141 A. L. R. 341. In deciding this last stated insistence of appellants we must, therefore, proceed upon that principle.

There is nothing indefinite as to the initial groups of beneficiaries of this public charitable trust. They are the congregations of the Church of Christ at Manchester, Coffee County, and at Fairfield, Bedford County, respectively. The will makes it clear that these two congregations belong to that sect of the Church of Christ which forbids in congregational worship the use of instrumental music. The religious tenets and doctrines of this sect of the Church of Christ are known, or capable of ascertainment. If, in the course of time, the congregation of the Church of Christ at Manchester or at Fairfield should adopt in the course of worship a practice or teaching contrary to the tenets and doctrines of that sect of the Church of Christ, then such congregation would no longer be entitled to the benefits of this trust. Upon the happening of such event these benefits are, therefore, in the language of the will, ''to the nearest Church of Christ congregation'', meaning that sect of this Church to which each of these congregations at present belong. We think,

therefore, that this charitable trust is defined with sufficient clearness to be enforced, notwithstanding the thought that there may be some practical difficulties in connection therewith. These difficulties are not insurmountable, as we construe this will.

In *Nance* v. *Busby,* 91 Tenn. 303, 313, 18 'S. W. 874, 876, 15 L. R. A. 801, the Court said: "In the case of a definite trust for the maintenance of a particular faith or form of worship the court will even go so far as to prevent the diversion of the property by the action of a majority of the beneficiaries, and, if there be a minority, who adhere to the original principles, such minority will be held to comprise the exclusive beneficiaries, and entitled to the control and enjoyment of the property without interference by the unfaithful majority." Applicable here is this further expression in the Nance case: "The conveyance under which this property is held is so specific and definite as to the 'faith and order' of the conveyees as to prevent its diversion to the use of any other than a congregation of Christians of the particular sect and holding the particular views entertained by the original beneficiaries."

It is also contended that this trust is invalid in that it creates a perpetuity. "Having concluded that the provisions of Mr. Frye's will herein discussed established a valid charity, the objection as to perpetuities and monopolies is, of course, without force." *Gibson* v. *Frye Institute,* 137 Tenn. 452, 465, 193 S. W. 1059, 1063, L. R. A. 1917D, 1062.

Finally it is insisted that this trust is in violation of Section 4407 which limits to five acres the amount of land a Church "may take, by deed or otherwise" for worship and parsonage, or for burial ground. The provisions of that section have no reference to land devised

to trustees for the use and benefit of religious denominations. This is made clear by the very next code section, 4408, providing that such lands shall be vested in a board of trustees or other persons designated by the denomination. See also *Reeves* v. *Reeves,* 73 Tenn. 644, 647.

For the reasons stated, the decree of the Chancellor will be affirmed with costs assessed against the appellants and their sureties.