Harry BOUCHER, Plaintiff-Appellee,

v.

Mrs. Maxine Boucher BUFFORD, Defendant-Appellant.

Court of Appeals of Tennessee, Western Section.

Aug. 17, 1971.

Certiorari Denied by Supreme Court Jan. 17, 1972.

Jere C. Gordon, Kenton, for defendant-appellant.

John C. Nowell, Jr., Harrell, Nowell & Harrell, Trenton, for plaintiff-appellee.

CARNEY, Presiding Judge.

This appeal involves the validity of the joint will of Robert M. Boucher and wife, Cleo Boucher, which was admitted to probate in common form on April 8, 1969, as the will of Mrs. Cleo Boucher. On an issue devisavit vel non in the Circuit Court of Gibson County, the will was upheld by the Circuit Judge, acting without a jury. Appeal was brought to this Court by the contestant, Mrs. Maxine Boucher Bufford, a daughter of the deceased, who was disinherited under the will. The husband, Robert M. Boucher, is still living. The only question before the Court below and before this Court is whether the joint wills of Mr. and Mrs. Boucher are separable as the will of each party though written in the same document and witnessed at the same time as joint wills.

The sole beneficiary under the will is Harry Boucher, one of the sons of Mrs. Cleo Boucher. A copy of the joint will is as follows:

"We, Robert M. Boucher and wife, Mrs. Cleo Boucher, being of sound and disposing mind, memory and understanding, and desirous of providing for the disposition of our estate in the event of our death, do hereby now make, publish and declare this to be our Last Will and Testament, hereby revoking all former wills by us at any time made.

As to our worldly estate and all property, real, personal, or mixed, of which we, or either of us shall die seized and possessed, or to which we shall be entitled at the time of our decease, we devise, bequeath, and dispose thereof in the manner following; to wit:

FIRST, we order and direct that our Executor, hereinafter named, pay all our just debts and funeral expenses as soon after our decease as conveniently may be.

SECOND, we give and bequeath to our son Harry Boucher, all our household furniture and furnishings and all other personal property of every kind.

THIRD; we give and devise to our son, Harry Boucher, the following real estate: The home premises upon which we now reside, containing 30 acres, and being the same 30 acre tract devised to Cleo Dodd Boucher in the will of her father and mother, J. W. Dodd and J. H. Dodd, respectively, and said will being of record in the office of the County Court Clerk in Trenton, Tennessee, in Will Book 'I', Page 411. The said tract of land is designated in said will as the 'Page' land and is located in the 24th Civil District of Gibson County, Tennessee. We also give and devise to our son, Harry Boucher the following two tracts of land containing ten acres and twelve acres, respectively: The ten acres tract being the same conveyed to us on January 15, 1920 by J. C. Boucher and wife by deed of record in Deed Book No. 66, Page 442; and the twelve acre tract being the same conveyed to us by M. E. Lambert and wife on October 5, 1925, by deed of record in Deed Book No. 73, Page 325

FOURTH, all property, real, personal, or mixed, disposed of in 'Second' and 'Third' Paragraphs above, have been given, bequeathed, and devised by us to our son Harry Boucher, with the following proviso, to wit: That the said Harry Boucher continue to provide for our financial support during the remainder of our natural lives, and then after our decease, shall assume the payment of, and pay all the expenses of our last illness and funeral expenses. After the faithful performance by him of the within 'Proviso', then all property bequeathed and devised herein is to be his absolutely to do with as he pleases. An additional proviso is that he assume the payment of a note to Federal Land Bank upon which there now remains an unpaid balance of about $3,100.00, and that he assume the payment of a note to Fred P. Elrod in the amount of $658.00. Both the said

notes are secured by trust deeds executed by us on the said lands to secure the payment of said notes.

LASTLY, We make, constitute and appoint Harry Boucher, our son, to be Executor of this our Last Will and Testament and hereby relieve him from the necessity of making bond.

IN WITNESS WHEREOF we have hereunto subscribed our names this the 12th day of July 1962.

/s/ Robert M. Boucher

/s/ Mrs. Cleo Boucher

The said Robert M. Boucher and Cleo Boucher on said 12th day of July 1962, signed this instrument, and published and declared the same to be their last will in our presence. And we, at their request, and in their presence, and in the presence of each other, have hereunto written our names as subscribing witnesses, this 12th day of July 1962.

/s/ Fred P. Elrod

/s/ H. Paris Townsend"

The will was prepared by Mr. Fred Elrod, a retired banker of Rutherford, Tennessee, a friend of Mr. and Mrs. Boucher. Mr. Elrod testified that Mrs. Boucher called him by telephone and told him how to prepare the will and that he prepared the joint will in accordance with her instructions and took it to their home along with the other witness, Mr. Townsend, who was deceased at the time of the trial. Mr. Elrod said that Mr. and Mrs. Boucher signed the joint will in the presence of Mr. Townsend and Mr. Elrod. Harry Boucher, the beneficiary was not present in the home at the time but went outside of the house during the signing.

Harry Boucher testified that in addition to the reasons expressed in the will for making him the sole beneficiary he had expended $1,400 cash money to qualify his father and mother for Social Security benefits.

The 30-acre tract of land mentioned in the third paragraph of the will was, in fact, owned in fee simple by Mrs. Cleo Dodd Boucher. The 10 acre tract of land mentioned in the third paragraph was, in fact, owned by Robert M. Boucher and wife, Cleo Dodd Boucher, as tenants by entirety. The third tract of land containing 12 acres was incorrectly stated in the will as having been conveyed to both Mr. and Mrs. Boucher. It was conveyed only to R. M. Boucher and Mrs. Boucher had no interest in said 12 acre tract of land at the time of her death.

Back in 1927 our Tennessee Supreme Court, through Chief Justice Green, in the case of Epperson v. White, 156 Tenn. 155, 299 S.W. 812, announced or recognized the general trend of decisions throughout the country to uphold the validity of joint wills where the documents were of a nature that the will of each testator could be treated as a separate disposition of his individual property and, therefore, entitled to probate on the death of each testator. However, in the leading case of Epperson v. White the Court denied the probate of the will of Mrs. Epperson because the bequest and devises contained in the joint will were not to be complete until the death of the survivor of the joint makers of the will.

In 1938 in the case of Popejoy, et al v. Peters, et ux, 173 Tenn. 484, 121 S.W.2d 538, Chief Justice Green, speaking again for the Tennessee Supreme Court, differentiated the former case of Epperson v. White and upheld a joint will because it met the test laid down in Epperson v. White, namely, that the will could be treated as a separate disposition by each testator of his individual property. Chief Justice Green observed that the fact that the two wills were written on the same piece of paper was not a matter of any consequence. Other cases upholding the validity of joint wills are Buchanan v. Willis, 195 Tenn. 18, 255 S.W.2d 8; Beach v. Cobble, 36 Tenn.App. 693, 260 S.W.2d 212; Farris v. Denton, 54 Tenn.App. 271, 390 S.W.2d 465.

Other cases denying the probate of joint wills are Huffines v. Minchey (1951), 34 Tenn.App. 504, 240 S.W.2d 259; McDaniel v. Owens, 39 Tenn.App. 73, 281 S.W.2d 259; Richmond v. Richmond (1950), 195 Tenn. 704, 227 S.W.2d 4.

In many respects the language of Mr. and Mrs. Boucher is very similar to the language of Epperson v. White, supra. In Epperson v. White, the testators provided that when they became unable to take care of themselves because of old age, etc. that the son and beneficiary, Terry E. Epperson, should take care of them and after their deaths pay doctors' bills, burial expenses, also pay stated sums of money to brothers and sisters and then closed with the following language:

"Finally, for, and in consideration of the faithful compliance with the provisions and conditions of this our last will and testament, we, A. J. Epperson and wife Susan E. Epperson do give and bequeath to our son Terry E. Epperson all our real estate consisting of several tracts of land as above described with all appurtenances belonging thereto, and also all the personal property such as household goods, and live stock, farm implements, cash on hands, notes and bonds and any other property of value that we shall die seized and possessed of, to have and to hold unto our son Terry E. Epperson, his heirs and assigns, forever."

In the Boucher will, the testators directed that debts be paid, funeral expenses be paid and then in the fourth paragraph the bequests and devises to Harry Boucher are expressly limited with a proviso that only after he has fully provided for both of the testators during their natural lives would the property be his. For emphasis we quote from the will as follows:

"After the faithful performance by him of the within proviso, then all property bequeathed and devised herein is to be his absolutely to do with as he pleases . . ."

To paraphrase the language of Chief Justice Green in the Epperson case, we state as follows: If this instrument is now admitted to probate as the separate will of Mrs. Boucher, the gifts therein will have to take effect as executory devises. No disposition effective at her death will be made of any of Mrs. Boucher's property. Vestiture is postponed until after the death of her husband. There is no particular estate.

We hold that the case at bar is controlled by the holding of our Tennessee Supreme Court in Epperson v. White and that these testators did not intend that their beneficiary take the property in fee until after the death of both testators. Therefore, the attempted testamentary disposition by Mrs. Cleo Boucher is void and her estate will have to be administered as an intestate estate. The assignment of error is sustained, the decree of the lower Court is reversed, and a decree will be entered setting aside the probate of the will of Mrs. Boucher in common form in accordance with this opinion.

MATHERNE and NEARN, JJ., concur.