Genevive GREGORY *v.* ESTATE OF H.T. GREGORY

93-202 866 S.W.2d 379

Supreme Court of Arkansas
Opinion delivered November 22, 1993

*Daggett, Van Dover & Donovan*, by: *Timothy Steven Parker*, for appellant.

*David Solomon*, for appellee.

ROBERT L. BROWN, Justice. This case involves the right of a widow, appellant Genevive Gregory, to elect to take against the will of her deceased husband, H.T. Gregory. The decedent had previously executed a reciprocal will and a separate contract not to revoke the wills with his first wife, Gladys Gregory. The two wills of the couple created testamentary trusts giving the six children of their marriage the estate of the surviving spouse. The issue before us in this appeal is who prevails between a second wife, in this case Genevive Gregory, electing to take her statutory share in the estate and the rights of the children as trust beneficiaries under the contract and reciprocal wills. The probate court concluded that the rights of the children were paramount, and from that decision Genevive Gregory appeals. We agree with the probate court and affirm its order.

On March 24, 1964, H.T. Gregory and his first wife, Gladys Gregory, executed "An Agreement to Make Reciprocal Wills and

Not to Revoke Same." The Agreement stated in part: "upon the death of either party the survivor shall not revoke his or her will without the consent of all the beneficiaries, devisees, and legatees." Pursuant to this Agreement, H.T. Gregory and Gladys Gregory simultaneously executed reciprocal wills, which were attached and incorporated into the Agreement by reference. The Agreement was also referred to in the body of the wills. The wills were the same and stated that the residuary estate of the first to die was to be held in trust with the surviving spouse and their son, H.T. Gregory, Jr., as trustees and the couple's six children as beneficiaries. Under that trust, the surviving spouse was to receive income for life and principal as deemed necessary by the trustees. Upon the death of the surviving spouse, the residuary property of that spouse was also to go into trust for the benefit of the children and the trust was to continue until the youngest surviving child reached the age of 25 and then the balance of the trust estate was to be distributed to the beneficiaries.

Gladys Gregory predeceased H.T. Gregory some time after 1964. Her property went into trust for the benefit of H.T. Gregory pursuant to the Agreement and her will. Thereafter, H.T. Gregory married appellant Genevive Gregory in the early 1970's. On April 26, 1979, H.T. Gregory executed a codicil to his 1964 will, giving Genevive Gregory a life interest in the marital home. The codicil provided that the home would revert to the children at her death in accordance with the wills of H.T. Gregory and Gladys Gregory. H.T. Gregory's children, the beneficiaries under both wills, consented to the 1979 codicil.

H.T. Gregory died on December 9, 1990, and is survived by Genevive Gregory, and by his six children, including his son, H.T. Gregory, Jr. His 1964 will and the 1979 codicil were admitted to probate that same month, and H.T. Gregory, Jr. was appointed executor of the estate. On January 15, 1991, Genevive Gregory filed an Election of Surviving Spouse to take her dower and homestead interests and her statutory allowances in the estate against H.T. Gregory's will.

On March 13, 1992, an inventory of H.T. Gregory's estate was filed listing the following assets: 37 acres of real estate around the homestead valued at $70,000, tools and implements valued at $250, two cars valued at $12,000, Certificates of Deposit

valued at $35,000, and stock and an insurance policy valued at $7,589.28.

On September 2, 1992, Genevive Gregory filed a Petition for Partial Distribution of the estate. In that petition, she acknowledged possession of the marital home but demanded her dower and homestead rights and her statutory allowances to which she was entitled, according to the petition, by virtue of her election to take against H.T. Gregory's estate. The petition also requested certain rents and profits from the land which comprised the homestead. In response to Genevive Gregory's petition, H.T. Gregory's children, as beneficiaries of the trust under both wills, stated that the rights of Genevive Gregory in relation to both H.T. Gregory's will and the Agreement between H.T. Gregory and Gladys Gregory had to be determined prior to the distribution of any assets of the estate.

A hearing was held where the facts were not in dispute, and the probate court was presented with the single question of who prevails between the surviving spouse, Genevive Gregory, on the one hand and the six children on the other. The court subsequently filed its letter opinion and stated in part:

> The language of the reciprocal Will reads—"that if [he or she] should not survive me then I give devise and bequeath said property unto my trustee as hereinafter designated for the use and benefit of my beneficiaries as designated and set out in paragraph #4." This language implies a present joint intention to make a gift of the collective property to the named beneficiaries effective upon the survivor's death and binding as of the signing of the reciprocal Will. The reciprocal Will represented the sole attempt by the signatories to effect a distribution of their collective property according to their intent. The decedent had no right to revoke or change his Will without the consent of the beneficiaries. To do otherwise would allow the survivor to receive advantages under the contract and then breach it thereby defeating and defrauding the deceased wife and her beneficiaries.
>
> . . . .
>
> Unless the husband has at some time during the mar-

riage relation held a heritable estate of some kind—legal or equitable—in the property in question, no statutory rights could attach in the wife's favor since a stream cannot rise higher than its source.

The probate court also found that it was "probable" that Genevive Gregory knew about the 1964 arrangements between Gladys Gregory and H.T. Gregory. Genevive Gregory then petitioned for clarification of whether the opinion also applied to personal property acquired after her marriage to H.T. Gregory. By letter, the probate court declined to clarify his opinion further.

Based on the reasoning in his letter opinion, the probate court denied the petition of Genevive Gregory to compel distribution of her homestead rights, dower interests, and statutory allowances and concluded that any rights of Genevive Gregory were subject to the prior rights of the six children under the 1964 will. The probate court specifically found that the order applied to property acquired by H.T. Gregory after his marriage to Genevive Gregory.

 Arkansas recognizes reciprocal wills, whether joint or mutual, as a legitimate estate planning device to effect the intent of a married couple to dispose of collective property. *See Smith* v. *Estate of Smith*, 293 Ark. 32, 732 S.W.2d 154 (1987); *George* v. *Smith*, 216 Ark. 896, 227 S.W.2d 952 (1950). Generally, the surviving spouse is required to dispose of the collective property according to the joint will or mutual wills. *See Janes* v. *Rogers*, 224 Ark. 116, 271 S.W.2d 930 (1954). Arkansas also has a firmly entrenched public policy that the surviving spouse of a testator has the right to elect to take against her deceased spouse's will:

> (a) When a married person dies testate as to all or any part of his or her estate, the surviving spouse shall have the right to take against the will if the surviving spouse has been married to the decedent continuously for a period in excess of one (1) year.

Ark. Code Ann. § 28-39-401 (1987). This right in the surviving spouse to take an elective share is well settled. *See, e.g., Lamb* v. *Ford*, 239 Ark. 339, 389 S.W.2d 419 (1965). This court has also recognized that when a spouse elects to take against a will, it

may be impossible for the decedent's wishes to be followed. *Clements* v. *Neblett*, 237 Ark. 340, 372 S.W.2d 816 (1963).

The public policy set forth in § 28-39-401 is disallowed only in limited circumstances such as in the case when the electing spouse was married to the decedent for less than a year. The surviving spouse's elective interest in the decedent's estate vests immediately upon the spouse's death, but it can vest only in property which the deceased spouse owned at the time of death. *Maloney* v. *McCullough*, 215 Ark. 570, 221 S.W.2d 770 (1949).

We are confronted with two competing public policies in this case — the right of a couple to contract to make mutual wills that are irrevocable and that dispose of both estates to third-party beneficiaries, and the right of a surviving spouse to take an elective share. The states are divided on this issue although the majority view appears to favor the third party beneficiaries. *See Rubenstein* v. *Mueller*, 19 N.Y.2d 228, 225 N.E.2d 540 (1967); *Estate of Stewart*, 69 Cal. 2d 296, 444 P.2d 337 (1968); *Keats* v. *Cates*, 100 Ill. App.2d 177, 241 N.E.2d 645 (1968); *Tiemann* v. *Kampmeier*, 252 Iowa 587, 107 N.W.2d 689 (1961); *Lewis* v. *Lewis*, 104 Kan. 269, 178 P. 421 (1919); *Price* v. *Aylor*, 258 Ky. 1, 79 S.W.2d 350.(1935); *Estate of Chayka*, 40 Wis.2d 715, 162 N.W.2d 632 (1968), *aff'd* 47 Wis.2d 102, 176 N.W.2d 561 (1970); *contra, Shimp* v. *Huff*, 315 Md. 624, 556 A.2d 252 (1989); *Tod* v. *Fuller*, 78 So.2d 713 (Fla. 1955); *Patecky* v. *Friend*, 220 Or. 612, 350 P.2d 170 (1960); *In re Estate of Arland*, 131 Wash. 297, 230 P. 157 (1924); *see generally Surviving Spouses's Right to Marital Share as Affected by Valid Contract to Convey by Will*, 85 ALR4th 418 (1991). We have not decided this issue in Arkansas.

The salient parts of the 1964 Agreement and mutual wills are these:

1. The Agreement incorporates the terms of the two wills by reference.

2. The Agreement states that the two mutual wills of H.T. Gregory and Gladys Gregory will remain in effect and be irrevocable.

3. The Agreement states that any revocation of the wills must be approved by consent of the beneficiaries, devisees, and legatees.

4. The Agreement is binding upon the heirs of H.T. Gregory and Gladys Gregory.

5. Each will states that the residuary estate will go into trust for the benefit of the surviving spouse.

6. Each will states that the residuary estate of the surviving spouse will go into trust to be distributed to the six children as soon as practicable assuming all have attained age 25.

Accordingly, at Gladys Gregory's death, her residuary property passed through her estate and immediately into the testamentary trust created by her will. It remained in trust while H.T. Gregory was alive with H.T. Gregory as co-trustee and sole beneficiary. At H.T. Gregory's death, his residuary property passed through his estate and into a testamentary trust to be distributed immediately to the six children if they are all age 25 or older. There is no dispute between the parties over the existence of the Agreement, what the Agreement says, or over the intent of H.T. Gregory in disposing of his property.

The probate court relied on *Rubenstein* v. *Mueller, supra,* in deciding that the six children's rights pursuant to the Agreement and mutual wills are superior to the elective rights of Genevive Gregory. In that case, joint wills were executed by Bertha Mueller and Conrad Mueller providing that the estate of the first to die would go to the survivor, and upon the survivor's death the property would go to certain named beneficiaries. Nine months later, Bertha Mueller died, and Conrad Mueller received her entire estate. Conrad Mueller later married Martha Mueller. The Court of Appeals considered in part whether Martha Mueller had the right to a statutory elective share against the first will for the *property received by Conrad Mueller.* The court reasoned:

As to the collective property we feel that, on the death of one party to the joint will, the survivor was bound by the mutual agreement that the named beneficiaries should receive the property remaining when the survivor died.

. . . .

> [T]he agreement embodied in the joint will provides that "Upon the death of the second . . . the estate of the second . . . is hereby bequeathed, devised and disposed of as follows." The survivor's right to full ownership of the collective property is transformed and modified by this joint agreement, effective upon the other's death as stated above, into but an interest during the life of the survivor with power to use the principal.

19 N.Y.2d 228, 234, 225 N.E.2d 540, 543 (1967) (citations omitted). We agree with this reasoning.

█ We also agree with the probate court that the residuary property set out in the inventory of H.T. Gregory's estate was subject to and encumbered by the superior contractual rights of the six children. This was clearly part of an estate plan effectuated between H.T. Gregory and Gladys Gregory to benefit themselves and then their children. The wills were not to be changed and would affect all of their property.

Genevive Gregory offered an inventory of a safety deposit box showing that some of H.T. Gregory's certificates of deposit were dated after the second marriage. The two automobiles also had 1980 dates. There was no proof, however, that these items of personal property did not derive from the property collectively owned by H.T. Gregory and Gladys Gregory or, alternatively, the assets of H.T. Gregory in which Gladys Gregory had no interest. It was incumbent upon Genevive Gregory to make such a showing to support her argument that the Agreement and mutual wills had no effect on property acquired by H.T. Gregory after his second marriage. Without some proof that H.T. Gregory's residuary estate was composed to some extent of after-acquired property which did not derive from the collective property of H.T. and Gladys Gregory, there is no basis for our reaching the issue of whether Genevive Gregory was entitled to her elective share in that property.

█ In summary, H.T. Gregory was bound by the 1964 Agreement and benefitted from it as the sole beneficiary of the testamentary trust of Gladys Gregory. Therefore, he was without power to change the Agreement. *Inerson* v. *Dushek*, 260 Ark.

771, 543 S.W.2d 942 (1976); *Janes* v. *Rogers, supra.* That the children had an interest in their parents' property is not only evidenced by the Agreement and mutual wills but also by procedures followed by the parties in executing and consenting to the codicil in 1979. We view the transfer of H.T. Gregory's property through his estate and into the testamentary trust as purely a matter of procedure. The important point is that the interest of the children in that property vested at the time of H.T. Gregory's death. Certainly, Genevive Gregory can stand in no better position than her deceased husband with respect to property held in his estate, and her husband had agreed that his property would pass to the children at his death by way of the trust. The decision of the probate court was correct.

Affirmed.